UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SCOTT NORTHROP,<br><br>                    Plaintiff,<br><br>    -against-<br><br>PAWLING CORPORATION and THE<br>PRESRAY CORPORATION,<br><br>                              Defendants. | Case No. 21-CV-4772<br><br>COMPLAINT<br><br><br>JURY TRIAL DEMANDED |

Plaintiff Scott Northrop ("Northrop"), by and through his counsel, Law Office of Laura Wong-Pan PLLC, complains about the Defendants, Pawling Corporation and The Presray Corporation as follows:

### NATURE OF THE CASE

1.      Plaintiff Scott Northrop is a 44-year old man who was born with a complex congenital heart condition affecting his pulmonary valve, which leaves his immune system weak and fragile and left him extremely susceptible to secondary disease.  Since he was five years old, he has undergone many medical procedures related to recurrence of atrial tachyarrhythmia.  Mr. Northrop also suffered from, and is monitored for, a stroke, ureteral cancer, renal tumor, obstructive sleep apnea, and he is pacemaker-dependent.

2.      This case is about the refusal of Pawling Corporation to accommodate Mr. Northrop's severe disabilities by refusing to permit him to continue to work from home, as requested by his physician due to his impairment and to avoid the risk of exposure to the Covid-19 virus and potentially death.  Then, when his request for accommodation was denied, the company failed to process request for leave under the Family and Medical Leave Act.

3.      Mr. Northrop brings this complaint pursuant to the Americans with Disabilities Act, 42 U.S.C. §12101 *et seq*. ("ADA"), Family and Medical Leave Act, 29 U.S.C. §2600 et seq. ("FMLA") and the New York Human Rights Law, Executive Law §296 ("NYSHRL"), arising out of Defendants' unlawful conduct, including their refusal to grant his request for a reasonable accommodation and the abrupt termination of Mr. Northrop's long-term employment, following his request for accommodation and for FMLA leave.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and § 1376 for civil actions arising under the laws of the United States and supplemental jurisdiction for claims arising under State law which form part of the same case or controversy.

5.      Venue is proper in the Southern District of New York because of acts of discrimination took place in Dutchess County and the Defendants are located in Dutchess County.

6.      On April 24, 2020, Plaintiff filed a complaint with the Equal Employment Opportunity Commission (EEOC), which was designated as Case No. 2020-04-24, alleging violations of the ADA and the NYSHRL.

7.      On March 3, 2021, the EEOC issued a Notice of Right to Sue. (Exhibit 1).

8.      This action is commenced within ninety days of the issuance of the EEOC's Notice of Right to Sue.

## PARTIES

9.      Mr. Northrop is a male individual who is a resident of the State of Connecticut.

10.      Mr. Northrop was a full-time employee of Pawling Corporation from August 4, 2014, until his wrongful termination of employment on April 6, 2020.

11.      Pawling Corporation is a Delaware corporation, located and doing business in the

State of New York, with a principal place of business at 32 Nelson Hill Road, Wassaic, Dutchess County, New York.

12.     Pawling Corporation is in an industry affecting commerce, as a manufacturer and seller of products such as entrance mats and gratings, athletic flooring systems, heavy-duty impact protection systems and parking & traffic safety products to global customers.

13.     Pawling Corporation has regularly employed at least fifteen employees during twenty or more calendar weeks in the current or preceding calendar year, and is therefore an employer under the ADA. See 42 U.S.C. § 12111(5)(A).

14.     The Presray Corporation is a Delaware corporation, located and doing business in the State of New York, with a principal place of business at 32 Nelson Hill Road, Wassaic, Dutchess County, New York.

15.     The Presray Corporation is in an industry affecting commerce, as the provider of "complex systems for nuclear power plants, BSL4 research laboratories or cleanrooms," as stated on its website, and develops and tests a range of products.

16.     At all relevant times, both Pawling Corporation and The Presray Corporation, separately and jointly, have employed more than fifty employees at their Wassaic location.

17.     Both defendants hold themselves out as affiliated companies, including for example, in Pool & Spa News which includes a manufacturer profile describing Pawling Corporation as employing 100 employees in two divisions, which are listed as "architectural products and Presray."

18.     Management and owners for both Pawling Corporation and The Presray Corporation are the same or similar, and operations are interrelated.

19.     For instance, at all relevant times, Gregory Holen was the Vice President for the

Pawling Corporation, and held a Vice President title with The Presray Corporation.

20.      At all relevant times, Jason Smith has been the Chief Executive Officer for both The Presray Corporation and the Pawling Corporation, and is listed as such on documents filed with the New York State Department of State.

21.      The Presray Corporation and Pawling Corporation have a centralized control of labor relations, and Defendant Maryellen Mix has been, at all relevant times, the Human Resources official for both corporations.

22.      On records filed with the New York State Department of State, the same address in Wassaic, New York is listed for service of process for both corporations.

23.      At all relevant times, Pawling Corporation and The Presray Corporation had interrelated operations, common management, centralized control of labor relations, and common ownership.

24.      Pawling Corporation and The Presray Corporation constitute a single employer and a single integrated enterprise.

## FACTUAL ALLEGATIONS

### A.  Mr. Northrop's disabling conditions

25.      Mr. Northrop has a physical impairment that substantially limits one or more major life activities, and a record of such an impairment, which qualifies as a disability under the ADA and the NYSHRL. See, e.g., 42 U.S.C. §12102.

26.      Mr. Northrop has been diagnosed with rare congenital heart defects, including double outlet right ventricle, ventricle septal defect, and other serious health conditions, for which he has required ongoing treatment, surgical intervention, and which impact his major life activities.

27.      Mr. Northrop's congenital heart condition increases the risk for developing other

serious medical conditions, including but not limited to pulmonary hypertension, arrhythmia, endocarditis, anticoagulation, and congestive heart failure.

28.     Mr. Northrop has undergone many medical procedures, including related to the recurrence of atrial tachyarrhythmia.

29.     In addition to his congenital heart defects, Mr. Northrop also suffered from a severe cerebrovascular incident in September 2009.

30.     Mr. Northrop's physical impairments involve the operation of his heart, a major bodily function, and his cardiovascular and circulatory system, and interferes with his immune system.

31.     Mr. Northrop's physical impairments are not episodic or of short duration but are a lifelong, chronic condition.

32.     Mr. Northrop's congenital heart defects substantially interferes with his major life activities, including but not limited to breathing, concentrating, and working, compared to most people in the general population who are not suffering from similar impairments.

33.     When Mr. Northrop experiences a cardiac episode, he experiences fatigue, dizziness, rapid heartbeat, shortness of breath and anxiety.

34.     Mr. Northrop has been out of work from time to time for medical procedures and appointments relating to his physical impairment.

35.     Starting on March 13, 2020, Mr. Northrop was out of work at Yale New Haven Hospital when he underwent an electrophysiology (EP) study, which is a test to assess his heart and to diagnose abnormal heartbeats or arrhythmia, and he also underwent an ablation, to restore a normal heart rhythm.

B.   Mr. Northrop's position as Sales Manager for Pawling Corporation.

36.     Mr. Northrop was hired by Pawling Corporation in about August 2014 as a full-time Estimating Project Manager.

37.     He consistently received positive annual performance reviews, and received performance-based raises in April 2015, April 2016, April 2017, and April 2018.

38.     In about June or July of 2018, a position as Inside Sales Manager became available and both Mr. Northrop and at least one other employee applied for the position.

39.     On about July 30, 2018, Mr. Northrop was chosen for the Inside Sales Manager position, and he received a pay increase, and a promotion.

40.     Mr. Northrop's duties as Inside Sales Manager included overseeing estimates and project managers, reviewing their quotations, ensuring that quotes were available in a timely manner, reviewing purchase orders, and ensuring that orders were fulfilled accurately and on time.

41.     All estimates and quotations are entered to the company's computer systems and may be reviewed electronically.

42.     To ensure that projects are completed on time, Mr. Northrop utilizes software programs, such as the Microsoft Access program, and is able to communicate with estimators and project managers by telephone, email or other electronic means.

43.     All of the essential functions of his position could be performed remotely.

C.     Mr. Northrop's Request for Accommodation and Termination

44.     As earlier stated, on March 13, 2020, Mr. Northrop was out of work when he was treated at Yale-New Haven Hospital for a scheduled EP study, and he also underwent an ablation, to restore a normal heart rhythm.

45.     Ms. Mix, Ms. Coldrick and other managers were aware that Mr. Northrop had a serious heart condition, and that he had recently undergone a medical procedure on his heart,

because he had told them about his condition, and he had been out of work on previous dates related to his physical impairment.

46.     For instance, on about October 23, 2019, Mr. Northrop emailed Sales Manager Heather Coldrick to let her know that he was experiencing atrial flutter and would not be able to come to work for two days, so that he could consult with his physician and be treated for the condition.

47.     Also, in the winter of 2019, after Mr. Northrop had been out for a few days due to his medical condition, Human Resources Director Maryellen Mix asked him how often this was going to happen, referring to his being out of work for medical reasons.

48.     Just prior to the medical procedure, on March 7, 2020, New York State Governor Cuomo issued Executive Order 202, declaring a Disaster Emergency in the State of New York due to the threat that Covid-19 posed to the health and welfare of New York residents and visitors.

49.     On March 13, 2020, the same date as Mr. Northrop's medical procedure, Ms. Mix sent out a notice to employees, which stated in part: "An employee who does not feel safe in their working environment and chooses to stay home due to Covid-19 only, will need to use any available PET/vacation time, with no points given, and once this time is exhausted you will be subject to unpaid time."

50.     On March 20, 2020, Mr. Northrop contacted Ms. Mix to request the opportunity to work from home, due to his compromised heart condition and on recommendation of his cardiologist.

51.     Mr. Northrop would have been able to perform the essential functions of his position while working from home.

52.     Mr. Northrop's request to work from home due to his disability constituted a

request for a reasonable accommodation under the Americans with Disabilities Act and New York Human Rights Law.

53.     Less than ten minutes after Mr. Northrop emailed Ms. Mix to request an accommodation on March 20, 2020, Ms. Mix rejected Mr. Northrop's request.

54.     Ms. Mix told Mr. Northrop that she had spoken to Heather Coldrick, the National Sales Manager, and Vice President Greg Holen, and they declined his request to work from home.

55.     Neither Ms. Mix nor any other officer, manager, administrator or representative of the Defendant made any attempt to initiate an informal, interactive process with Mr. Northrop concerning his need for accommodation, as described in ADA regulations at 29 C.F.R. §1630.2(o)(3) and in EEOC interpretive guidance documents.

56.     Neither Ms. Mix nor any other officer, manager, administrator or representative of the Defendants requested any medical documentation or other information before the request was denied.

57.     Later during the day of March 20, 2020, at about 1:51pm Ms. Mix sent an email to employees stating:

> This is to inform all of our employee working here in our building that we will be continuing with Business as Usual as we are deemed an essential business and that will continue until we tell you otherwise... . I want to reiterate that if you do not feel safe coming into the building you may stay home and use any PET or vacation time that you have until either this Covid-19 is under control or you run out of time, and you can then take unpaid time. There are no points associated with taking time off and when these bans are lifted we will notify you.  Thank you again for working with us and please stay away from groups of people when you are on your own time.

58.     Mr. Northrop was ready, willing and able to work from home and could have performed the essential duties of his position with the reasonable accommodation of permitting

him to work from home.

59.     Mr. Northrop was physically unable to come to work due to his heart condition following the medical procedure, and without exposing himself to unreasonable risk to his health and safety.

60.     On about March 20, 2020, after his request for accommodation was denied, he wrote to Ms. Mix: "then put me on disability."

61.     Later that day, on March 20, 2020, Ms. Mix forwarded Mr. Northrop two blank forms and told him by email that "I have attached the forms you will need for Short Term Disability and corresponding FMLA. Please complete your info and have your Physician complete theirs and return to me ASAP."

62.     Ms. Mix gave Mr. Northrop a Certification of Health Care Provider for his health care provider to fill out.

63.     At Ms. Mix's request, Mr. Northrop's health care provider filled out the disability form on March 23, 2020, and the FMLA form on March 24, 2020.

64.     On about March 24, 2020, Mr. Northrop's medical provider completed the Certification of Health Care Provider and forwarded it to Pawling Corporation, indicating on the Certification that he had a single ventricle passive pulmonary blood flow, which increases morbidity and mortality due to Covid, and wrote "needs isolation for duration of high Covid 19 cases."

65.     Mr. Northrop's health care provider estimated that six weeks of FMLA would be required due to Mr. Northrop's fragile heart condition and also due to the risk of increased morbidity and mortality if exposed to Covid-19.

66.     Mr. Northrop's physician also recommended his isolation.

9

67.     Both the FMLA and short-term disability forms were provided to Ms. Mix.

68.     Mr. Northrop submitted the FMLA and short-term disability forms because Defendants refused to provide him with reasonable accommodation for his disability.

69.      Mr. Northrop understood that the FMLA leave would begin immediately, and if approval took some time, that it would be retroactive to the date of the application.

70.     Defendants did not direct Mr. Northrop to return to work while he was waiting for a decision on his FMLA application.

71.     Mr. Northrop was not told that his FMLA application was denied.

72.     He was not informed that his leave time was due to expire.

73.     On April 6, 2020, at 4:59 pm, Ms. Mix notified Mr. Northrop by email that he was terminated because his leave time expired on April 6, 2020.

74.     Ms. Mix forwarded a termination letter to Mr. Northrop that falsely claimed that he "elected to stay home and not report to work," and notified him that his health insurance would be discontinued as of April 7, 2020.

75.     On April 6, 2020, Mr. Northrop received a termination letter, which falsely stated:

> On March 23, 2020 due to the concern for Covid-19 you elected to stay home and not to return to work. This request was granted, and we agreed to pay you the time that would have accrued during the entire calendar year of 2020. The Vacation and PET time balance expired on April 6, 2020. Therefore, your employment will end effective April 7, 2020. You will be eligible to apply for accelerated unemployment as of this date.

76.     Mr. Northrop was not given the opportunity to continue working from home, or to use unpaid leave, as non-disabled employees in the company were, as reflected in Ms. Mix's March 13, 2020 and March 20, 2020 notices.

77.     On April 7, 2020, Ms. Mix sent Mr. Northrop an email stating that "I am sorry that

this has happened" and in response to his concerns about the cancellation of his health insurance, she added: "I wish I had better information for you but unfortunately it is what it is."

78.     On April 8, 2020, Mr. Northrop received a paycheck that included deductions for the following month's health, dental and vision insurance, although he had been told that the insurance was discontinued on April 7, 2020.

79.     As a result of the acts and conduct complained of herein, Mr. Northrop has suffered loss of income, emotional distress, mental anguish, pain suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

### AS AND FOR A FIRST CAUSE OF ACTION

**Disability Discrimination in Violation the
Americans with Disabilities Act, 42 U.S.C. §12101 *et seq.***

(against Defendant Pawling Corporation)

80.     Mr. Northrop repeats and realleges each and every allegation made in the above preceding paragraphs.

81.     Mr. Northrop claims Defendant Pawling Corporation violated the ADA, 42 U.S.C. §12101 *et seq*.

82.     Pawling Corporation is an employer within the meaning of the ADA.

83.     42 U.S.C. §12112 specifically states that "No covered entity shall discriminate against a qualified individual on the basis of disability…"

84.     42 U.S.C. §12112(b) further clarifies that "…the term 'discriminate against a qualified individual on the basis of disability' includes" . . . "(5)(B) not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose undue hardship on the operation of the business of such covered

entity;"

85.     Plaintiff Northrop was an employee with a disability as defined by the ADA. See 29 CFR 1630.2(g).

86.     Ms. Mix, Ms. Coldrick and/or other managers had knowledge that Plaintiff had a disabling condition.

87.     Mr. Northrop had a physical impairment, and a record of a physical impairment, that substantially limited one or more of his major life activities.

88.     Mr. Northrop was regarded by Pawling Corporation as an individual with a physical impairment.

89.     Mr. Northrop's physical impairment involved the operation of a major bodily function, including the functions of the circulatory, cardiovascular and/or immune system.

90.     Mr. Northrop requested a reasonable accommodation that included working from home, and Pawling Corporation violated the ADA by refusing to grant his request for a reasonable accommodation.

91.     Pawling Corporation violated the ADA by refusing to permit Mr. Northrop to remain at home on an unpaid leave, although it was Pawling Corporation's stated policy that even non-disabled employees may remain on an unpaid leave if they did not feel safe in the workplace.

92.     Pawling Corporation violated the ADA by failing to engage in an interactive process to determine the most appropriate modifications or adjustments to his work environment to enable Mr. Northrop to perform the essential functions of his position.

93.     Pawling Corporation violated the ADA by terminating Mr. Northrop's employment rather than comply with its obligations under the ADA.

94.     By the acts described herein, Pawling Corporation discriminated against Mr.

Northrop based on his disability.

95.     By virtue of Defendant's conduct as alleged in this Complaint, Plaintiff has been injured physically, economically and emotionally. He is suffering irreparable injury, monetary damages and damages for psychological injury, mental anguish, emotional distress and other compensable damages.

96.     As Defendant's conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Mr. Northrop seeks punitive damages.

## AS AND FOR A SECOND CAUSE OF ACTION

**Disability Discrimination and Failure to Accommodate in Violation of
New York Human Rights Law § 296 *et seq*.**

(Against Defendant Pawling Corporation)

97.     Plaintiff repeats and realleges each and every allegation made in the preceding paragraphs.

98.     The NYSHRL, Executive Law § 296 provides that "3. (a) It shall be unlawful discriminatory practice for an employer . . . to refuse to provide reasonable accommodations to the known disabilities, or pregnancy-related conditions, of an employee, prospective employee or member in connection with a job or occupation sought or held or participation in a training program."

99.     At all relevant times, Mr. Northrop suffered from heart defects which constitute a physical impairment resulting from an anatomical, physiological, genetic or neurological condition, which is demonstrable by accepted clinical or laboratory diagnostic techniques and has a record of such impairment.

100.     At all relevant times, Mr. Northrop suffered from a disability as that term is defined at Executive Law §292(21).

101.    Defendant Pawling Corporation engaged in an unlawful discriminatory practice by refusing to provide Mr. Northrop a reasonable accommodation in accord with his known physical limitations.

102.    Defendant Pawling Corporation engaged in disability discrimination by refusing to permit Mr. Northrop to work from home, or to remain on an unpaid leave, despite the company's written policy of permitting non-disabled employees to remain on unpaid leave to avoid the risk of Covid-19.

103.    By the acts and practices described herein, Pawling Corporation discriminated against Mr. Northrop on the basis of his disability in violation of the NYSHRL.

104.    Pawling Corporation acted intentionally and with malice and/or reckless indifference to Mr. Northrop's statutorily protected rights.

105.    Defendant's conduct violated the NYSHRL.

106.    By virtue of Defendant's conduct as alleged in this Complaint, Plaintiff has been injured physically, economically and emotionally. He is suffering irreparable injury, monetary damages and damages for psychological injury, mental anguish, emotional distress and other compensable damages.

### AS AND FOR A THIRD CAUSE OF ACTION

**Violation of Family and Medical Leave Act**
29 U.S.C. § 2600 et. seq.
(against Pawling Corporation and The Presray Corporation)

107.    Plaintiff repeats and realleges each and every allegation made in the preceding paragraphs.

108.    The FMLA prohibits an employer from interfering with , restraining or denying the exercise of (or attempts to exercise) any rights provided by the FMLA.

109.    Pawling Corporation and The Presray Corporation are a covered employer under the FMLA because they jointly employed over fifty employees and are a single employer and single integrated enterprise.  See 29 CFR 825.104

110.    Mr. Northrop was an eligible employee under the FMLA because he was employed by the employer for at least twelve months, and for at least 1,250 hours of service with such employer during the previous 12-month period. See 29 U.S.C. § 2611(2)(A)(i)(ii).

111.    Mr. Northrop was entitled to take leave under the FMLA as an individual with a serious health condition, as that term is defined under the FMLA. See 29 U.S.C. §2611(11).

112.    Plaintiff applied for FMLA leave and provided the information requested by the Defendants in connection with that request.

113.    Plaintiff was qualified for leave under the FMLA.

114.    Defendants terminated Plaintiff's employed under circumstances giving rise to an inference of retaliatory intent by, for instance, terminating him shortly after he applied for FMLA, failing to inform him of the decision on his application, failing to communicate with him regarding the request, failing to inform him of his risk of termination, including misleading and false statements in his termination letter.

115.    Defendants' conduct interfered with Plaintiff's ability to utilize FMLA qualified leave, and constituted FMLA retaliation.

116.    Plaintiff has suffered and will continue to suffer lost past and future earnings, and other damages compensable under the FMLA.


**JURY DEMAND**

Plaintiff demands a jury trial on all issues to be tried.


15

WHEREFORE, Plaintiff respectfully requests that this Court enter the following relief:

a.      Judgment in favor of Plaintiff and against the Defendant;

b.      A judgment awarding Plaintiff all available damages for Defendant's violation of

Plaintiff's rights under the ADA, NYSHRL and FMLA;

c.      Punitive damages;

d.      An order granting plaintiff the costs, attorneys' fees, and disbursements incurred in

connection with these proceedings; and

e.      Such other and further relief as is deemed by the Court to be just and proper.


Dated:        Poughkeepsie, New York
              May 27, 2021

                              Respectfully submitted,

                              LAW OFFICE OF LAURA WONG-PAN PLLC

                              Laura Wong-P

                              Laura Wong-Pan
                              Attorney for Plaintiff
                              319 Mill Street
                              Poughkeepsie, New York 12601
                              Tel. (845) 218-1288
                              Fax (845) 684-0007
                              lwp@laurawongpanlaw.com